JOHN DOE,
Plaintiff,

    vs.

William Lee, Governor
of the State of Tennessee, and
DAVID RAUSCH, Director of the
Tennessee Bureau of Investigation,
in their official capacities

}
)
)
)
)
)

FILED

2023 NOV 13  PM 2: 06

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I) INTRODUCTION

1. Plaintiff John Doe comes before this court pro se, proceeding without legal counsel. He is a Tennessee Resident who has been retroactively required to comply with the Tennessee Sexual Offender Registration verification, and Tracking Act of 2004 for the rest of his life. See Tenn. Code Ann. 40-39-201-40-39-218 (2021) (the "Act").

2. Doe was convicted in 1987 in the State of Tennessee, McMinn County. This was seven years before the Act came into effect and seventeen years prior to its amendment to its most recent incarnation. Doe was convicted in 2003 in the State of Tennessee, McMinn County. This was ten years after the Act came into effect.

3. Under the Act, Doe is subject to constant supervision by hostile law enforcement officers; required to report in person every calendar year and for numerous other reasons seven days prior to his birthday or within seven days after; banned from living or working in many areas; restricted as to when he can travel; limited in his free rights to speech; hindered from maintaining normal relationships; identified publicly and falsely as "violent"; and

subjected to a vast array of state-imposed restrictions that encompass virtually every facet of his life. Doe must comply with these extensive restrictions and obligations for as long as he lives or face severe criminal sanctions.

4. Doe asks this Court to recognize what other courts across the country have increasingly found: that the nature of sex offender registration has fundamentally changed since 2003, when the U.S. Supreme Court upheld a registration scheme that imposed only "minor and indirect" restraints on registrants. *See Smith v. Doe*, 538 U.S. 84, 100 (2003).

5. Multiple Courts - including the United States Court of Appeals for the Sixth Circuit - have now recognized that the retroactive application of sex offender registration schemes and their associated restrictions violate the constitutional protections against *ex post facto* laws. See, e.g., Doe v. Miami-Dade County, No. 15-14336, -F.3d.-, 2016 WL 5334979 (11th Cir. Sept. 23, 2016) (slip opinion); Does #1-5 v. Snyder, 834 F.3d 696 (6th Cir. 2016); US. v. Juvenile Male, 590 F.3d 924 (9th Cir. 2009), vacated as moot, 131 S.Ct. 2860 (2011); State v. Williams, 952 N.E.2d 1103 (Ohio 2011); Wallace v. State, 905 N.E.2d 371 (Ind. 2009); State v. Letalien, 985 A.2d 4 (Me. 2009); Commonwealth v. Baker, 295 S.W.3d 437 (Ky. 2009); Doe v. State, 189 P.3d 999 (Alaska 2008); see, also, Doe v. Swearingen, No. 4:16cv501-RH/CAS, prelim. inj. at 11 (N.D. Fla. September 27, 2016) (Florida sex offender registry law requirement to report all "internet identifiers" unconstitutionally vague); In re WZ., 957 N.E.2d 367 (Ohio Ct. App. 2011) (automatic classification of juvenile as Tier III sex offender required to register for life based solely on crime of conviction violates due process).

6. The Act imposes significant restrictions on Doe so as to violate the prohibition against *ex post facto* laws.

subjected to a vast array of stat-imposed restrictions that encompass virtually eveery facet of his life. Doe must comply with these extensive restrictions and olligations for as long as he lives or face criminal sanctions.

7. The Act violates Doe's fundamental rights to travel, work, speak, associate, and spend time with his family, without being narrowly tailored to protect a compelling state interest.

8. The Act violates the Due Process Clause by requiring Doe to register for life and publicly and falsely labels him as a "violent" individual.

9. The Act further violates the Due Process Clause by violating the terms of Doe's valid and approved plea agreement.

10. The Act further violates the Due Process Clause by imposing criminal liability for passive acts which are not *mala in se,* and therefore do not "alert the doer to the consequences of his deed," without any proof of "actual knowledge of the duty to [comply with the law] or proof of the probability of such knowledge and subsequent failure to comply." *Lambert v. People of the State of California, 355 US 225, 228-229 (1957).* Rather, the Act imposes criminal liability solely on the basis that the defendant "knowingly" commits various innocent acts, such as standing idly within 999 feet of a school or park rather than 1001 feet. *See* Tenn. Code Ann. Section 40-39-211(d) (2021).

11. The Act further violates Due Process Clause because many of its provisions are void for vagueness. Doe is liable for complying with a sweeping and complex law – and faces a felony conviction and mandatory minimum of 90 days of incarceration for a first offense, *See Tenn. Code Ann. Section 40-39-211(d) (2021)* – the language of the Act does not provide clear notice of what is prohibited or required

12. Doe hereby seeks declaratory and injunctive relief barring the Act's application to him.

## II) JURISDICTION

13.   Jurisdiction is proper under 28 USC Sections 1331 and 1343 as Doe seeks redress for deprivation of rights secured by the United States Constitution. Doe's claims are brought under 42 USC Section 1983.

14.   Doe claims for declaratory and injunctive relief are authorized by 28 U.S.C. Sections 2201- 2202, by Fed. R. Civ. P. 57 and 65, and by the legal and equitable powers of this Court.

15.   Venue is proper in the Middle District of Tennessee pursuant to U.S.C. Section 1391(b).

## III) FACTUAL ALLEGATIONS: THE PLAINTIFF

16.   Doe resides in Middle District of Tennessee.

17.   In early 1987 before the Act became into effect Doe was charged with Aggravated Sexual Battery and subsequently plead guilty to one count of Sexual Battery of a Victim Under the Age of 13 (thirteen) in Tennessee.

18.   Doe successfully completed his sentence and was released from prison in 1992 resulting from said plea. Doe never had to register because the Act had not come into effect.

19.   In early 2003 Doe was charged with Aggravated Sexual Battery and subsequently plesd guilty to one count of "Sexual Battery." he received two years on probation. As a result of the onerous and vague requirement of the Act Doe was violated and served out the remainder of his sentence the local jail, he was released in 2003.

20.   Due to implications of the Act, Doe is severely limited in his ability to preform routine functions, e.g. live a productive life as a citizen. To this day he is labeled a "sexual offender". The impacts of the Act have made a negative effects on Doe's life `detailed below.While Tennessee had enacted an early iteration of a sex offender reegistry at the time Doe decided to enter his plea, the scope and ramifications said act where nowhere near as

expansive or burdensome as they have been made under subsequent iterations, or as they currently exist under the Tennessee Act. Tennessee first enacted a precursor to the modern Act in 1994 after the date of Doe's first plea, i.e. The Sexual Offender Registration and Monitoring Act (hereafter "the 1994 Act").

21. As described in detail below, the 1994 act would have required Doe to register as a "sex offender" but did not otherwise restrict his liberty. Furthermore, registrarion was private as the 1994 made the registry only available to law enforcement. The Act also would have authorized Doe to seek removable from the registry after completion of his sentence.

22: Ten years later, the 1994 Act was repealed and replaced by the original version of the current Act. 2004 Tenn. Pub. Act, ch. 921.

23. Until that point, registration remained private. That changed when the Act required all registrants be listed in a public internet database, along with their home and work addresses, and other identifying information. Doe thus became publicly labeled a "violent sex offender" for the first time, and has so labeled to this day. He also became subject to numerous, onerous, and vague restrictions on where he can live, work, or go for the remainder of his life, which has only increased with subsequent revisions to the Act.

24. As a result of the onerous and vague requirements of the Act, Doe has suffered severe impacts in his personal and professional life, as well as frequent interactions with local law enforcement.

25. After the 2004 adoption of the Act, Doe had problems trying to gain employment he was terminated from numerous jobs after they became aware of his inclusion on the Registry.

26. Doe has at various times received threatening messages stating he should be killed.

27. Doe had to relocate and he now resides in middle Tennessee.

28. The registry had Doe homeless living on the streets, this placed a lot of stress and mental anguish on him where he had to seek professional help.. The changing in the registry law made it hard to live a normal productive life.

29. While Doe was currently able to work at the time, Doe inclusion on the registry has cost him employment in the past, and would render any attempt at finding a conventional job difficult or impossible.

30. The State has retroactively burden him with an increasingly onerous and punitive registration law whose vague and arbitrary provisions and penalties enable and encourage law enforcement to treat Doe as an active criminal and disrupt his life with little to no warning . Doe was arrested and charged with a violation of the registry laws due to a mistake where he lived in a motel and changed rooms. He was facing a life sentence in the state in which he reside.

31. Doe can no longer go back to where he was raised and lived most of his life. To this day he is labeled a "Sexual Offender. It has negatively impacted any relationship Doe has been in. It's

32. Had Doe known that his conviction would eventually have led to his inclusion in a registry and subject him to a lifetime of severe restrictions on his liberty, he would have attempted to negotiate an alternative resolution to his case, or else taken the matter to trial and sought acquittal.

33. Due to stigma attached to Doe's registry status, Doe is forced to keep his name separated from publicly facing aspects of his life as discovery of his registry status routinely results in public humiliation and damage to his reputation. This inhibits Doe's ability to build a reputation as a law abiding citizen.


## IV FACTUAL ALLEGATIONS: THE DEFENDANT

34. Defendant William Lee is the Governor of the State of Tennessee. He is sued in his official capacity.

35. . Pursuant to Article III § 1 of the Tennessee Constitution, the supreme executive power of the state is vested in the governor. The Tennessee Constitution further provides that the governor shall take care that applicable federal and state laws are faithfully executed. Tenn. Const. Art. III § 10. Governor Lee is ultimately responsible for the enforcement of the laws of this state and for the supervision of all state departments, including the Tennessee Bureau of Investigation (hereinafter "TBI).

36. Therefore, Governor Lee is an appropriate defendant in a case challenging the constitutionality of the Act.

37. Defendant David Rausch is the Director of the TBI. He is sued in his official capacity.

38. The Act requires the TBI to maintain Tennessee's sex offender registry. Tenn. Code Ann. § 40-39-204(a),(d), 40-39-206(a) (2021).

39. The TBI's responsibilities include enforcing the Act, maintianing the state's database of sex offenders, maintaining an Internet-accessible public sex offender registry, registering offenders (along with other agencies), developing registration forms, providing statutorily required notices to registrants, collecting registration fees, and coordinating with national law enforcement and the national registry. Tenn. Code Ann. §§ 40-39-203(i), 40-39-204(a) & (d), 40-39-205(a) &(f), 40-39-206 (2021)

40. The director of the TBI is an appropriate defendant in a case challenging the constitutionality of the Act.

## V: FACTUAL ALLEGATIONS: HISTORY OF THE ACT

41. The Tennessee General Assembly passed its first sex offender registration law in 1994. 1994 Tenn. Pub. Acts, ch. 976. Until that time, Tennessee did not require anyone to register as a sex offender for any purpose.

THE 1994 ACT:

42. The 1994 Act required the TBI to maintain a confidential registry with basic information about people convicted of sex offenses, including: full name and alias, date and place of birth, social security number, driver's license number, parole or probation officer contact information, offenses of conviction, current place of employment, current address, and any other information required by TBI regulations. Id § 4. The information in the registry was expressly designated confidential and available only to law enforcement. Id § 7(c).

43. Individuals convicted of sex offenses had to register within ten days of release from probation, parole, or incarceration without supervision, report a change of residence within ten days, and report temporarily residing in a municipality or county within ten days.[2] After initial registration, the TBI was required to send a registrant a verification and monitoring form every ninety days, with completion thereof required within ten days of receipt.[3]

44. The 1994 Act did not require in-person registration or reporting. Registrants had only to complete the required form and "cause such form to be delivered to TBI headquarters in Nashville."[4]

45. Under the 1994 Act, registrants could petition a court for relief from the Act's requirements ten years after release from probation, parole, or incarceration without supervision.[5] The court was required to grant the petition if it found the registrant had complied with the Act, was rehabilitated, and did not pose a threat to public safety.[6] If the

---

[2] Id § 4.
[3] Id § 5.
[4] Id §§ 4-5.
[5] Id § 8.
[6] Id § 8(c).

petition was granted, the TBI was required to expunge the registrant's data from its registry.

46. The 1994 Act applied to people convicted of sex offenses on or after January 1, 1995. The Act also applied retroactively to people whose convictions occurred before that date if they were still subject to probation, parole, or incarceration as of that date.[8] Thus, a person who completed his sentence before the effective date was not required to register.

47. The Act was subject to repeated amendments by the Tennessee General Assembly to expand its scope, i.e.:

    a. 1996:

        i. People charged with sex offenses but subject to either pre-trial or judicial diversions must register.[9]

    b. 1997:

        i. People on pre-trial and judicial diversion must register even after completing diversion and having their judicial records expunged.[10]

        ii. Registry information is made public for an offense committed after July 1, 1997, and made accessible via the Internet and a toll-free number.[11]

        iii. Individuals convicted on the non-sexual offenses of false imprisonment of a minor and kidnapping of a minor, as well as the aggravated and especial aggravated enhancements thereto, must register as "sexual offenders."[12]

---

[7] Id.
[8] Id § 3(2).
[9] 1996 Tenn. Pub. Acts, ch. 834, § 1.
[10] 1997 Tenn. Pub. Acts, ch. 455, § 3.
[11] 1997 Tenn. Pub. Acts, ch. 461, § 2.
[12] 1997 Tenn. Pub. Acts, ch. 466, § l.

iv. The TBI is authorized to require registrants to provide a current photograph.[13]

c. 2000:

i. A mandatory minimum 180-day sentence is imposed for any violation of registration requirements and is not subject to suspension, diversion, or probation.[14]

ii. Lifetime registration is required for people with more than one conviction for a sex offense or witha a conviction for a "violent sexual offense," defined as actual or attempted aggravated rape, rape, agravated sexual battery, or rape of a child.[15]

iii. Registrants must report within ten days of coming into a municipality or county in which they work or are students.[16]

d. 2002:

i. Registrants must report within ten days of being employed or becoming a student or volunteer at an institution of higher education in the county or municipality in which they reside, and the name and address of that institution is added to the registry and made public for registrants who committed offenses after October 27, 2002.[17]

48. Although the General Assembly expanded the scope of the 1994 Act, the law, in its fundamental form, only required an individual to register and submit to periodic reporting. It did not impose any limitations on where a registrant could work, live, or go.

---

[13] Id.
[14] 2000 Tenn. Pub. Acts, ch. 882, § 1
[15] 2000 Tenn. Pub. Acts, ch. 977, §1-2.
[16] Id § 3.
[17] 2002 Tenn. Pub. Acts, ch. 469, §§ 35, 5, and 11.

49. However, in 2003 the General Assembly changed the fundamental nature of the 1994 Act by adding prohibitions against registrants:

    a. Establishing a residence or accepting employment within 1000 feet of a school or child care facility;

    b. Establishing a residence or accepting employment within 1000 feet of the victim's or victim's immediate family member's home;

    c. Coming within 100 feet of the victim;

    d. Establishing a residence or other living accommodation with a minor other than the registrant's child; or

    e. Establishing a residence or other living accommodation with the registrant's child if:

        i. The registrant's parental rights have been or are being terminated; or

        ii. Any child of the registrant has been a victim of sexual abuse by the registrant.

50. A violation of these prohibitions was made a Class A misdemeanor.[18]

REPEAL OF THE 1994 ACT AND ADOPTION OF CURRENT ACT:

51. The 1994 Act was repealed and replaced with the current Act in 2004.[20] The Act expanded upon the scope and burden of the 1994 Act in multiple ways, such as the following. The below is a summary, but not intended as an exhaustive list of all modifications and/or expansions of the Act.

---

[18] 2003 Tenn. Pub. Acts, ch. 95 § 1.
[19] Id
[20] 2004 Tenn. Pub. Acts, ch. 921, codified in Tenn. Code Ann. § § 40-39-201 - 40-39-211 (2004).

Page 11

a.   Registrants were classified as "sexual offenders" or "violent sexual offenders," Tenn. Code Ann. Section 40-39-202(9) (2004), with violent sexual offenders" required to register for life, id. Section 40-39-207(g).

b.   The non-sexual offenses of false imprisonment and kidnapping where the victim is a minor, as well as solicitation of, conspiracy to commit, criminal responsibility for, facilitation of, and being an accessory after the fact to those non-sexual offenses, are defined as "sexual offenses" and "violent sexual offenses." Id. Section 40-39-202(16) & (24).

c.   Reports had to be made in person. Id. Sections 40-39-203, 40-39-204.

d.   Reports were required after certain triggering events (e.g., change of residence) had to be made within 48 hours of the event, and additional triggering events were specified (e.g. change of job, re-incarceration for any offense). Id. Sections 40-39-203, 40-39-04(e).

e.   Registrants designated as "sexual offenders" such as Doe had to report annually within seven days before their birth date to verify their registration information and update their finger prints, palm prints, and photograph. Registrants designated as "violent sexual offenders" had to report and provide the same information quarterly. All registrants had to pay an annual administrative fee Id. Section 40-39-204(b)-(c).

f.   Registrants had to disclose more information, including the contact information of their nearest living relative, whether any minors live with them, and information about any automobiles, mobile homes or boats they lived in. Id. Section 40-39-203(h).

Doe's registry information remained confidential, however, because his conviction occurred before July 1, 1997. Id. § 40-39-206(c).

 g. Registrants not subject to lifetime registration could no longer petition a court for removal from the registry but had to apply to the TBI for removal from the registry. Id. § 40-39-207.

 h. Any violation of registration requirements-including untimely registration, untimely reporting, failure to sign the registration form, failure to pay the administrative fee-was now a felony instead of a misdemeanor. Id. § 39-16-208.

52. Since its initial adoption, the Act has been repeatedly amended, expanding both the burdens placed upon a registrant, as well as the scope of its application.

 a. 2004:

  i. Registrants must report any employment, not just employment of more than fourteen days; any place they reside more than five consecutive days as their "primary residence; and any place they reside more than fourteen days in a year as their "secondary residence." 2005 Tenn. Pub. Acts, ch. 316, § 1, codified at Tenn. Code Ann.§§ 40-39-202(4), (11) & (15) and 40-39-203(a) (2005).

  ii. Registrants must report all automobiles, mobile homes, and boats. Id. § 40-39-203(i)(l0).

  iii. The annual administrative fee registrants must pay is increased from $60 to $100. Id. § 40-39-204(b)-(c).

 b. 2006:

      i.    Registrants whose victims were minors are prohibited from living, obtaining sexual offender treatment, or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public. 2006 Tenn. Pub. Acts, ch. 890, § 20.

c.  2007:

      i.    Registrants must report within forty-eight hours of a "material change in employment or vocational status." 2007 Tenn. Pub. Acts, ch. 126, § 1, codified at Tenn. Code Ann. § 40-39-203(a)(3) (2007).

      ii.   All registrant information, regardless of the date of offense, is now public. 2007 Tenn. Pub. Acts, ch. 531, § 1. Thus, years after his conviction, Doe for the first time becomes publicly branded as a "violent sexual offender" and all of his registration information-where he lives, where he works, what car he drives, and so on-becomes publicly available.

d.  2008:

      i.    Registrants must report any change to their "electronic mail address information, any instant message, chat, or other Internet communication name or identity information that the person uses or intends to use," which information is now included on their publicly available registration. 2008 Tenn. Pub. Acts, ch. 979, § 1.

      ii.   The TBI is authorized to share this information with businesses that offer "electronic communications or remote computing services" for

"prescreening users" in exchange for the businesses notifying the TBI if a registrant is using their system. Id.

iii. Registrants whose victims were minors are prohibited from dressing as a "real or fictional person or character" or "member of a profession, vocation, or occupation while in the presence of a minor, or with the intent to attract or entice a minor to be in the presence of the offender"-for example, such a registrant may not dress as a clown at a children's birthday party. 2008 Tenn. Pub. Acts, ch. 1164, § 13.

iv. Registrants whose victims were minors may not engage in any employment that causes them to be in direct and unsupervised contact with a minor, nor may they operate an ice cream truck or an "emergency vehicle" for the purpose of "attracting or enticing a minor to be in the presence of the offender." Id.

e. 2009:

i. All registrants (not just registrants whose victims were minors) are forbidden to be on the premises of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public if they have reason to believe children are present. 2009 Tenn. Pub. Acts, ch. 597, § I.

ii. All registrants are forbidden to stand or "sit idly" within 1,000 feet of those locations when children are present unless they have custody or responsibility for a child there or another "specific or legitimate reason for being there." Id.

f. 2010:

   i. Registrants must provide copies of their passports and immigration documents and professional licensing information. 2010 Tenn. Pub. Acts, ch. 1138, § 7.

   ii. Registrants must maintain a valid driver's license or photo identification card labeling them as "sexual offenders" or "violent sexual offenders" and must always have it in their possession. Id.,§ 13.

   iii. No more than two registrants may live in the same residence. 2010 Tenn. Pub. Acts, ch. 1145, § I.

g. 2011:

   i. Registrants must report twenty-one days before traveling out of the country or, with the designated law enforcement agency's prior written approval, twenty-four hours before traveling. 2011 Tenn. Pub. Acts, ch. 266, § 1.

   ii. Public library directors are authorized to prohibit registrants from library premises. 2011 Tenn. Pub. Acts, ch. 287, § 1.

h. 2014:

   i. All registrants (not just registrants whose victims were minors) are prohibited from living or working within 1,000 feet of a school, day care center, public park, playground, recreation center, or public athletic field available for use by the general public. 2014 Tenn. Pub. Acts, ch. 992, § 1.

   ii. Local governments are authorized to establish "community notification systems" to notify residents, schools, and childcare facilities when a

Page 16

registrant resides within a certain distance of those locations and to charge a fifty dollar fee to registrants to pay for the system. 2014 Tenn. Pub. Acts, ch. 751, § I. Authorized forms of notice include a "community notification flier" delivered to all legal residences within a specified area and publication by newspaper or internet. Id.

i. 2015:

    i. Registrants are prohibited from being "alone" with a minor in a "private area." Tenn. Pub. Acts, ch. 516, § 1. A registrant is "alone" with a minor if there are no other adults present, or if there are other adults present but they are "asleep, unconscious, or otherwise unable to observe" the registrant and the minor, "unable or unwilling to come to the aid of the minor" if necessary, or are themselves registrants. Id.

    ii. Registrants must report email, social media, and instant message accounts, "other Internet communication platforms or devices," and usernames, screen names, or other methods used to access those accounts or web sites. Id., § 7.

53. In sum, Tennessee's sex offender registry law began as a private law enforcement database in 1995 but has changed radically in the last twenty-one years. Its present form, the Act, subjects registrants to obligations, restraints, disabilities, and punishment of a different character and a greater order of magnitude than those imposed by the 1994 Act or even by the Act in its original form.

54. In summation, Tennessee's sex offender registry law began as a private law enforcement database in 1995 but has changed radically in the nearly three decades since its inception. Its present form, the Act, subjects registrants to obligations, restraints, disabilities, and punishment of a different character and a greater order of magnitude than those imposed by the 1994 Act or even by the Act in its original form.

## VI: FACTUAL ALLEGATIONS: SEX OFFENDER CLASSIFICATION AND RETROACTIVE APPLICATION OF THE ACT

55. The Act classifies registrants as "sexual offenders," "violent sexual offenders," and "violent juvenile sexual offenders." Tenn. Code Ann. § 40-39- 202(9) (2021). A registrant's classification determines the length of time that a person must register and the frequency of reporting. See id. §§ 40-39-204, 40-39- 207(g).

56. "Sexual offenders" must register and comply with all obligations imposed by the Act for at least ten years, while "violent sexual offenders" must register and comply for life. See Tenn. Code Ann. § 40-39-207(a) & (g) (2021).

57. A registrant's classification is based solely on the offense of conviction. Tenn. Code Ann. § 40-39-202( 19), (20), (30) & (31) (2021).

58. A registrant's classification is not based on, and does not correspond to, an individualized assessment of a registrant's actual risk of re-offending or the danger any registrant poses to the public.

59. The 1994 Act did not have separate classifications and granted registrants the right to seek removal from the registry after ten years. See 1994 Tenn. Pub. Acts, ch. 976, § 8. The 1994 Act was amended in 2000 to require lifetime registration for people with more than one conviction for a sex offense or with a conviction for a "violent sexual offense,"

Page 18

defined as actual attempted aggravated sexual battery, or rape of a child. 2000 Tenn. Pub. Acts, ch. 997, section 1-2. this amendment was applied retroactively.

60. The lifetime registration requirement was in the current Act and expanded to apply to anyone classified as a "violent sexual offender," and also applied retroactively. Tenn. Code Ann. Section 40-39-207(g)(1) (2021).

61. Thus, Doe, who until 2000 had the right to seek removal from the registry after tdn years, must now register for life, without any individualized determination about his risk or whether lifetime registration is warranted.

62. Even upon the clearest proof that Doe is not dangerous, there is no mechanism under the Act that would allow Doe to have his registration obligations eliminated or reduced.

## VII; FACTUAL ALLEGATIONX; IMPACT OF THE ACT ON THE PLAINTIFF

63. The Act imposes obligations, disabilities, and restraints that are so extensive they cannot be set out in full here.

64. By way of summary, the Act subjects Doe to continuous reporting, surveillace, and supervision. In addition, the Act severely limits his ability to find housing and employment; get an education; travel; engage in speech activities (including use of the Internet); be free from harassment and stigna; and understand what is required of him under the Act.

65. Finally, registration under the Act triggers a vast array additional obligations, disabilities, and restraints under other federal, state, and local laws, as well as private policies barring or limiting registrants from access to goods or services available to the public.

**REPORTING, SURVEILLANCE, AN SUPERVISION**

66. As "a sexual offender," Doe must report in person annually in person seven days before his day of birth or no later than seven days after, Tenn. Ann. Section 40-39-204 (b)(1) (2021), and Doe's complete name and all aliases;

    b.     Doe's date and place of birth;

    c.     Doe's social security number;

    d.     A photocopy of Doe's drivers license;

    e.     Sexual offenses or violent sexual offenses for which Doe has been convicted, the date of the offenses, and the county and state of each conviction;

    f.     Name of any of Doe's current employers and length of employment, including physical addresses and phone numbers;

    g.     Doe's current physical address and length of residence at that address, including any primary or secondary residences;

    h.     Doe's mailing address, if different from Doe's physical address;

    I.     Any vehicle, mobile home, trailer, or manufactured home used or owned by Doe, including descriptions, vehicle information numbers, and license tag numbers;

    j.     Any vessel, live-aboard vessel, or houseboat used by Doe, including the name of the vessel, description, and all identifying numbers;

    k.     Name and address of each institution of higher education in this state where Doe is   employed or practices a vocation or is a student;

    l.     Doe's race and gender;

    m.     Name, address, and phone number of Doe's closest living relative;

Page 20

n. Whether victims in the underlying offenses were minors or adults, the number of victims, and the correct age of the victim or victims and of Doe at the time of the offense or offenses, if the ages are known;

o. Verification by the TBI or Doe that the TBI has received Doe's DNA sample;

p. A complete listing of Doe's electronic mail address information, including usernames, any social media accounts Doe uses or in tends to use, instant message accounts, other Internet communication platforms or devices, and Doe's username, screen name, or other method by which Doe accesses these accounts or web sites;

q. Whether any minors reside in Doe's primary or secondary residences;

r. Any other registration, verification, and tracking information, including fingerprints and a current photograph of Doe, his vehicles, and his vessels, required by TBI rules;

s. Copy of Doe's passport; and

t. Professional licensing information that authorizes Doe to engage in an occupation or carry out a trade or business.

Tenn. Code Ann.§ 40-39-203(i) (2021).

67. That Act requires Doe to provide a "current" photograph, Tenn. Code Ann. § 40-39-203(i)(l9) (2021), which means if Doe's appearance changes, he must update the photograph within forty-eight hours. Id. § 40-39-203(a)(4).

68. In addition to reporting in person at regular intervals, Doe must report in person within forty-eight hours if any of the information above changes. Tenn. Code Ann. § 40-39-203(a)(4) (2021). For example, Doe must report in person within forty-eight hours

if he changes his address, changes jobs, changes his e-mail address, opens a Facebook account buys or begins using a vehicle, or stops using a vehicle.

77. There are no "good cause" exception to the reporting requirements or the forty-eight hours notification requirements. Regardless of illness, injury, transportation problems, or other emergencies, Doe must report in person within forty-eight hours or face criminal charges.

78. The Acts reporting, surveillance, and supervision requirements are similar to, but more restrictive and onerous than, the reporting, surveillance, and supervision that Doe experienced while serving his sentence on probation

79. Doe had to report to his probation officer only periodically for a maximum of two years. Under the Act, Doe must report annually, and every time he leaves or returns to the country, and on numerous other occasions, for the rest of his life. While on probation, Doe reported briefly at scheduled times and could even report some of his matters by telephone to his probation officer. Under the Act Doe had to report in person.

80. If Doe had been accused of violating his probation term, the maximum sanction would be to serve his sentence. Under the Act, Doe faces arrest and prosecution on a felony charge for each alleged violation of the law.

81. Under the Act, Doe must report significantly more information than what he was required to report while he was serving his sentence on probation.

82. The Act's requirement that minor changes be reported in person with forty-eight hours is a level of reporting that far exceeds what Doe experienced while he was serving his sentence on probation.

83. The fundamental difference between the reporting, surveillance, and supervision requirements of probation and those of the Act is that probation is based on that convicted persons like Doe can be rehabilitated and live a productive life once they have served their sentence, Act is

69. Doe is and always be a menace to society, regardless how many years Doe lives peaceably, productively, and without criminal conduct.

70. As a result of the Act's immediate, coupled with with the annually reporting requirements, Doe must, for the rest of his life, report in person to law enforcement with frequency that is greater than his reporting obligations when he was on probation.

71. For Doe, the lifetime surveillance imposed by these reporting requirements is not only intrusive but burdensome. Doe cannot even pay his annual registration fee without appearing in person because the law arbitrarily commands it.

72. The lifetime registration requirement was included in the current Act and expanded to apply to anyone classified as a "sex offender" was two convictions and also applied retractively. Tenn. Code Ann. Section 40-39-207(g)(1) (2021).

73. Thus, Doe, who had the right to seek removal from the registry after ten years, must register for life, without any individual determination a bout the risk or whether lifetime registration is warranted.

74. Eve n upon the clearest proof that Doe is not dangerous, there is no mechanism under the Act that would allow Doe to have his rgistration obligations eliminated or reduced.

HOUSING:

75. The Act severely limits Doe's access to housing. The Act bars Doe from 'residing' within 1,000 feet of any 'public school, private or parochial school, licensed day care center, after child care    facility, public park, playground, recreation center or public athletic field available for use by general public," making a substantial amount of housing unavailable as a matter of law. Tenn. Code Ann. Section 40-39-211(a)(1) (2021).

76. Doe is also prohibited from residing with a minor. Teen. Code Ann. Section 40-39-211(c) (2021).

Page 23

EMPLOYMENT:

84. The Act bars Doe from working within 1,000 feet of any "public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public," making a substantial number of employments unavailable as a matter of law. Tenn. Code Ann. § 40-39-21 l(a)(I) (2021).

EDUCATION:

85. The Act makes it more difficult for Doe to get an education. Doe's sex offender registration must include the name and address of each institution of higher education where Doe is a student, Tenn. Code Ann. § 40-39-203(i)(l2) (2021), and the TBI must provide Doe's registration information to any school in which Doe becomes a student, id. § 40-39-2 l 4(a)(2). This means Doe is automatically stigmatized if he seeks an education.

TRAVEL:

86. Doe's status as a registrant has severely restricted his ability to travel.

87. Doe must provide at least twenty-one days' advance notice before traveling out of the country. Tenn. Code Ann. § 40-39-204(h) (2021).

88. In addition, Doe must plan his travel so that he is able to register in person quarterly, as required by the Act. Tenn. Code Ann. § 40-39-204(b) (2021).

89. If Doe travels, he must comply with any applicable sex offender regis tration laws in other jurisdictions. Depending on how long he travels, he may have to register as an offender. Because sex offender registration laws are exceed ingly complex and vary from state to state, it is extremely difficult to obtain accurate information about either affirmative reporting obligations (such as registering one's presence in a state) or

prohibitions on ordinary behavior (such as visiting a library or park) in other jurisdictions.

90. For example, under Florida law, a person registered as a sex offender in one state must register within forty-eight hours of establishing a "temporary residence" in Florida. Fla. Stat. Ann. § 943.0435(2)(a)(l)(a) (2021). A "residence" includes a "temporary residence," which is "a place where the person abides, lodges, or resides, including, but not limited to, vacation, business, or personal travel destinations in or out of this state, for a period of 5 or more days in the aggregate during any calendar year and which is not the person's permanent address...." Id § 943.0435(l)(f) & § 775.21(2)(m). Thus, if Doe goes on vacation and stays in a hotel for more than five days in Florida, Doe must register in the county in which the hotel is located. Yet, having registered in Florida, he must report forty-eight hours before leaving Florida. Id. § 943.0435(7). Thus, if Doe stays in Florida for six days, it is impossible for him to comply with the law unless he knows to register early enough so that he can then give forty-eight hours' notice of his intention to leave.

91. As a result of Doe's registered sex offender status, some foreign countries prohibit Doe from entering.

92. Doe's fears of further restrictions on his ability to travel abroad are well-founded. On February 8, 2016, President Obama signed into law an act entitled the "International Megan's Law to Prevent Child Exploitation and Other Sexual Crimes Through Advanced Notification of Traveling Sex Offenders," Pub. Law No. 114-119, 130 Sta. 15 (2021). That law generally authorizes the federal government to give "advance notice" to a foreign country when a registered sex offender is traveling to that country, id. § 4(e)(3), and makes it a federal crime for a registered sex offender to fail to report information on

intended international travel, id. § 6(a). The law also requires that passports issued to persons registered as sex offenders have a "unique identifier" indicating their status. Id. § 8.

93. It is almost certain that any country receiving advance notice that Doe intends to travel to that country will prohibit Doe's entry. Thus, the requirement under Tennessee law that Doe register as a sex offender will likely bar him from traveling anywhere else in the world.

SPEECH AND INTERNET:

94. The Act severely restricts Doe's ability to speak freely. Doe not only must provide law enforcement with all electronic mail addresses, instant message addresses, log-in names, or other identifiers that are assigned to or routinely used by him, Tenn. Code Ann. § 40-39-203(i)(1 7) (2021), but must also report within three days whenever he establishes any electronic mail address, instant message address, or other designation used in Internet communications or postings, id. § 40-39-203(a)(7).

95. Doe is concerned about using the Internet because the Act is unclear about whether, for example, he must report if he sets up an online account to pay his taxes, gas bill, water bill, electric bill, or mortgage, registers with Netflix, purchases or reviews products on Amazon.com, or even opens a PACER account or an CM/ECF account with this Court.

96. Doe would like to communicate with his family on Facebook and participate on other social media platforms like Twitter and Nextdoor but does not do so because he would have to register information about his account. As a result, he cannot view or share

97. Under the Act, Doe cannot engage in anonymous political speech on the Internet because Doe Must publicly report the e-mail address or other username he uses on any site such as Change.org or Whitehouse.gov. The United States Supreme Court has held that anonymous political speech exemplifies the pur of the First Amendment:

98. In addition, Doe is afraid that because he must provide all email and Internet identifiers pursuant to the Act, his Internet use will be monitored. The fear is well-founded because the Act expressly authorizes such monitoring.

99. Registry information regarding all registered offender's electronic mail address information, any instant massage, chat or other Internet communication name or identity information may be electronically transmitted by the TBI to a business or organization that offers electronic communication or remote computing services for the purpose of prescreening users or for comparison with information held by the requesting business or organization. In order to obtain information from the TBI, the requesting business or organization that offers electronic communication or remote computing services shall agree to notify the TBI forthwith when a comparison indicates that any such registered sex offender's electronic mail address information, any instant message, chat or other Internet communication name or identity information is being used on their system. The requesting business or organization shall also agree that the information will not be further disseminated. Tenn. Ann. Section 40-39-203(m) (2021).

100. Doe would like to communicate with his family on facebook and participate on other social media platforms like Twitter and TicTok but does not do so because he would have to registry information about his account. As a result,he cannot view or share

family photographs, stay in touch with his children and grandchildren, interact with friends and acquaintances, or participate in community discussions.

101. In addition, Doe is afraid that because he must provide all email and Internet identifiers pursuant to the Act, his Internet use will be monitored. That fear is well-founded because the Act expressly authorizes such monitoring:

102. Registry information regarding all registered offender's electronic mail address information, any instant message, chat or other Internet communication name or identity information may be electronically transmitted by the TBI to a business or organization that offers electronic communication or remote computing services for the purpose of prescreening users or for comparison with information held by the requesting business or organization. In order to obtain the information from the TBI, the requesting business or organization that offers electronic communication or remote computing services shall agree to notify the TBI forthwith when a comparison indicates that any such registered sex offender's electronic mail address information, any instant message, chat or other Internet communication name or identity information is being used on their system. The requesting business or organization shall also agree that the information will not be further disseminated. Tenn. Code Ann.§ 40-39-203(m) (2021).

103. Under the Act, Doe cannot engage in anonymous political speech on the Internet because Doe must publicly report the e-mail address or other username he uses on any site such as Change.org or Whitehouse.gov. The UnitedStates Supreme Court has held that anonymous political speech exemplifies the purpose of the First Amendment:

  a. Under our Constitution, anonymous pamphleteering is not a pernicious, fraudulent practice, but an honorable tradition of advocacy and of dissent.

> Anonymity is a shield from the tyranny of the majority. See generally J. Mill, On Liberty and Considerations on Representative Government 1, 3-4 (R. McCallum ed. 1947). It thus exemplifies the purpose behind the Bill of Rights, and of the First Amendment in particular: to protect unpopular individuals from retaliation-and their ideas from suppression-at the hand of an intolerant society.

McIntyre v. Ohio Elections Comm'n, 514 U.S. 334, 357 (1995). The anonymous online petitioner, blogger, and commenter is the modern version of the anonymous pamphleteer. The Act deprives Doe of his constitutional right to engage in such protected speech.

FALSE INFORMATION AND PUBLIC STIGMATIZATION:

104. The sex offender registry stigmatizes Doe and exposes to public hostility by publicly and falsely labeling him as "violent" based solely on the statutory classification of his offense as a "violent sex offense." Doe is given the same label as a defendant who is convicted of actually raping and murdering a person this year.

105. The public registry website not only generates hostility toward Doe, it enables anyone hostile toward Doe because of his registry status to find him by posting extensive personal information about Doe, including his residential address, employer address, date of birth, school information, vehicle information, physical description, and photograph. Tenn. Code Ann. § 40-39-2030 (2021). As a result, Doe is exposed to a substantial risk of harassment and violence.

106. Because Doe is stigmatized as a "violent" sex offender on the public registry website, he and his family have been subjected to harassment, mainly by law enforcement officers, neighbors, and customers at his business.

Page 29

VAGUENESS, STRICT LIABILITY, AND IMPOSSIBILITY OF COMPLIANCE:

107. The restrictions and obligations of the Act are so vague that Doe is unable to know whether or not he is in violation of the law and are so extensive and pervasive that Doe is literally unable to comply with the law.

108. The Act's requirements for reporting personal information are so vague that Doe does not understand what information must be reported or what changes in information subject him to the in-person, forty-eight hours reporting requirement.

109. For example, the Act requires Doe to report a "material change in employment or vocation status" within forty-eight hours and defines a "material change in employment or vocation status" to include "substantially changing the offender's hours of work at the same employment or vocation" or "any other change in the offender's employment or vocation that differs from that which the offender originally registered" if the change remains in effect for five consecutive days or more. Tenn. Code Ann.§ 40-39-203(a)(6) (2021). If Doe takes a vacation of more than five days and does no work, he does not know whether he must report that period.

110. The Act also requires Doe to report any change to any information on his registration within forty-eight hours. Tenn. Code Ann. § 40-39-203(a)(4) (2021). The information on his registration includes "any vehicle used or owned by an offender" and a "current photograph" of that vehicle. Id. § 40-39-203(i)( 1 0) & (19). If Doe borrows a car even once, Doe does not know whether he must report that use. If Doe's car breaks down so that he cannot use it, Doe does not know if he has to report that he is no longer using the car. If Doe gets in a wreck and the car sustains visible damage, Doe does not know

Page 30

whether he must report and provide an updated photograph of the car. If Doe has to use a rental car while his car is in the shop, Doe does not know whether he must report that and then report again when he returns the rental car to the rental company.

111. The Act prohibits Doe from residing or working within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public, and prohibits Doe from standing, sitting "idly," or remaining within that same distance of those locations if Doe "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." Tenn. Code Ann. § 40-39- 211(a) & (d) (2021). Doe often cannot know if he is standing or sitting "idly" within 1,000 feet of one of these prohibited areas because the property boundaries are unknown and the distances are impossible to measure without sophisticated equipment.

112. Doe also cannot know whether a law enforcement officer will deem him to have a "legitimate reason for being there" and is therefore subject to arbitrary arrest.

113. Doe must obtain and maintain a valid driver's license or photo identification and to "always have the license or identification card" in his possession. Tenn. Code Ann. § 40-39-213(a) (2021). The law does not define "possession." Thus, it is unclear whether Doe is in violation of the law in situations where he cannot have his identification on his person, for example, while swimming, sleeping, or exercising.

VAGUENESS, STRICT LIABILITY, AND IMPOSSIBILITY OF COMPLIANCE:

114. The restrictions and obligations of the Act are so vague that Doe is unable to know whether or not he is in violation of the law and are so extensive and pervasive that Doe is literally unable to comply with the law.

115. The Act's requirements for reporting personal information are so vague that Doe does not understand what information must be reported or what changes in information subject him to the in-person, forty-eight hours reporting requirement.

116. For example, the Act requires Doe to report a "material change in employment or vocation status" within forty-eight hours and defines a "material change in employment or vocation status" to include "substantially changing the offender's hours of work at the same employment or vocation" or "any other change in the offender's employment or vocation that differs from that which the offender originally registered" if the change remains in effect for five consecutive days or more. Tenn. Code Ann.§ 40-39-203(a)(6) (2021). If Doe takes a vacation of more than five days and does no work, he does not know whether he must report that period. This is particularly difficult for Doe because he is a self-employed entrepreneur who sets his own hours.

117. The Act also requires Doe to report any change to any information on his registration within forty-eight hours. Tenn. Code Ann. § 40-39-203(a)(4) (2021). The information on his registration includes "any vehicle used or owned by an offender" and a "current photograph" of that vehicle. Id. § 40-39-203(i)( 1 0) & (19). If Doe borrows a car even once, Doe does not know whether he must report that use. If Doe's car breaks down so that he cannot use it, Doe does not know if he has to report that he is no longer using the car. If Doe gets in a wreck and the car sustains visible damage, Doe does not know

Page 32

whether he must report and provide an updated photograph of the car. If Doe has to use a rental car while his car is in the shop, Doe does not know whether he must report that and then report again when he returns the rental car to the rental company.

118. The Act prohibits Doe from residing or working within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public, and prohibits Doe from standing, sitting "idly," or remaining within that same distance of those locations if Doe "has reason to believe" minors are present and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." Tenn. Code Ann. § 40-39- 211(a) & (d) (2021). Doe often cannot know if he is standing or sitting "idly" within 1,000 feet of one of these prohibited areas because the property boundaries are unknown and the distances are impossible to measure without sophisticated equipment.

119. Doe also cannot know whether a law enforcement officer will deem him to have a "legitimate reason for being there" and is therefore subject to arbitrary arrest.

120. Doe must obtain and maintain a valid driver's license or photo identification and to "always have the license or identification card" in his possession. Tenn. Code Ann. § 40-39-213(a) (2021). The law does not define "possession." Thus, it is unclear whether Doe is in violation of the law in situations where he cannot have his identification on his person, for example, while swimming, sleeping, or exercising.

121. In discussing this case with counsel, Doe learned of many obligations and restrictions of which he was previously unaware. Doe is concerned that he will inadvertently violate the Act's requirements because he does not understand what they are.

122. The Act imposes criminal liability despite the impossibility of compliance. The Act imposes liability regardless whether illness, injury, or practical difficulties make compliance impossible.

123. Doe fears that, despite his best efforts to understand and comply with the law, and despite the absence of any intention to violate the law, he will be held criminally liable for any failure to comply. He knows that he can be punished with prison even if he does not know a particular act or omission is illegal, because the Act imposes criminal liability solely on the basis that the defendant "knowingly" commits various innocent acts.

124. Any violation of the Act's requirements is a Class E felony, Tenn. Code Ann.§ 40-39-208(b) (2021), which carries a minimum sentence of one year and a maximum sentence of six years, id. § 40-35-11 l(a)(S). People convicted of violating the Act's requirements, however, are subject to mandatory minimum sentences and fines of ninety days and $350 for the first offense, 180 days and $600 for the second offense, and one year and $1,100 for the third or subsequent offense. Id. § 40-39-208(b)-(e).

CONSEQUENCES BEYOND THE ACT:

125. Because Doe must register as a sex offender under the Act, he is also subject to a vast and labyrinthine array of laws and ordinances imposed on registered sex offenders by the federal government, other state or tribal govern ments, and municipalities.

126. Because registration in one state generally triggers registration in another state, the fact that Doe is subject to the Act means he is also subject to the sex offender registration laws of other jurisdictions if he travels or moves.

## VIII: FACTUAL ALLEGATIONS: REQUIREMENTS NOT REASONABLY CONNECTED TO ACTUAL RISK POSED BY INDIVIDUAL REGISTRANT

127. Under the Act, the classification to which an individual is assigned ("sexual offender" or "violent sexual offender"), whether an individual is listed on the public registry, and how long an individual must register, are all based solely on the offense of conviction, not on an individualized assessment of the individual's actual level of risk. Tenn. Code Ann. § 40-39-202(19), (20), (30) & (31) (20 I 6).

128. The Act even requires persons convicted of various non-sexual offenses to register as "sexual offenders" or "violent sexual offender": convictions for soliciting, facilitating, attempting, conspiring to commit, committing, aiding and abetting, or being an accessory after the fact to the crimes of false imprison ment of a minor and kidnapping of a minor require registration as a sex offender. Tenn. Code Ann. § 40-39-202(20) & (31) (2021). So, for example, if Person A falsely imprisons a child, flees, and takes shelter with Person B, who knowingly conceals him from the police, Person B is guilty of being an accessory after the fact to the false imprisonment of a child and must register as a "sexual offender." If, however, Person A commits aggravated kidnapping, Person B will be required to register as a "violent sexual offender" for life.

129. Individuals classified as "violent sexual offenders" under the Act can pose a lower risk of reoffending than individuals classified as "sexual offenders." The result of this

offense-based registration system is that the public's and law enforcement's ability to identify sexually dangerous persons is significantly reduced.

130. Because recidivism risk declines significantly with advancing age and with time spent offense-free in the community, requiring registration for life for "violent sexual offenders" is both inefficient and unnecessary.

131. In addition, the Act, by focusing on the danger posed by strangers (who can be identified through the registry), misidentifies the source of risk. In the vast majority of cases of child sexual abuse, the offender was a family member or acquaintance, not a stranger listed on the registry.

132. Public sex offender registration and residency restrictions, which focus on "stranger danger," give parents a false sense of security by implying that knowing where sex offenders live or banishing them from the community in fact reduces the risk of sex offenses being committed, when such measures do not have this effect.

133. In sum, the requirements of the Act bear no rational relationship to the risks that individual registrants pose to the community.

## IV: FACTUAL ALLEGATIONS: GEOGRAPHIC EXCLUSION ZONES

134. Under the Act, it is a felony for Doe to knowingly reside or work within 1,000 feet from the property line of any public school, private or parochial school, licensed day care center, other child care facility, public park, playground, recreation center or public athletic field available for use by the general public (an "Exclusion Zone"). Tenn. Code Ann. § 40-39-211(a)(l) (2021). Doe is also prohibited from standing, sitting "idly," or remaining within an Exclusion Zone if Doe "has reason to believe" minors are present

Page 36

and does not have a "reason or relationship involving custody of or responsibility for" a minor or "any other specific or legitimate reason for being there." Id. § 40-39-21 l(d)(l).

135. Although the Act requires Doe's "knowledge" to establish a violation, Tenn. Code Ann. § 40-39-21 l(a)(l) & (d)(l) (2021), police officers consider Doe's mere presence in an Exclusion Zone sufficient to establish probable cause, thus Doe is subject to arrest any time he enters an Exclusion Zone.

136. The State of Tennessee does not make maps available to the public or registrants showing where these Exclusion Zones are located or what their boundaries are.

137. Furthermore, the Exclusion Zones can change on a moment's notice. For example, Doe is prohibited from being within 1,000 feet of any "public athletic field available for use by the general public in this state when children " are present. Tenn. Code Ann. § 40-39-21 l(d)(l)(B) (2021). If Doe sits in his car 1,000 feet from the soccer field at Elmington Park on West End Avenue in Nashville when that field is empty, he is not in violation of the law, but the moment Doe sees a child set foot on the soccer field, Doe is in violation of the law. Even if Doe does not see the child, Doe is subject to arrest at the whim of any investigating police officer, because that officer will conclude his mere presence gives the officer probable cause. Doe might lawfully "sit idly" on a sidewalk bench on Monday and find himself charged with a felony on Tuesday because a day care opened within 1,000 feet of the bench.

138. It is impossible for ordinary people to identify the areas that are inside and outside these Exclusion Zones. The task is difficult even for experts with sophisticated mapping technology. Distances are difficult to estimate or measure and property boundaries are difficult to locate. Moreover, Exclusion Zones often have irregular shapes, because they

are measured from property boundaries and because the zones overlap. Exclusion Zones are not shaped like simple circles around a fixed point.

139. It is impossible for Doe to comply with the prohibition on standing, sitting, or remaining within an Exclusion Zone because that requires moment to-moment knowledge of whether or not he is in an Exclusion Zone.

140. The Exclusion Zones cover vast areas, especially in urban and suburban regions. Because Exclusion Zones are measured as the crow flies, rather than as people actually travel between two points, some Exclusion Zones cover areas that are much further than 1,000 feet from a school, in terms of the travel distance.

141. Exclusion Zones put a significant percentage of cities and towns off-limits. As a result, Exclusion Zones severely restrict access to employment and housing and limit registrants' ability to engage in normal human activity. For example, Davidson County has hundreds of parks and greenways covering thousands of acres, dozens of public community centers, hundreds of public and private schools, and hundreds of day care centers. Doe cannot live or work within the 1,000 feet of the property lines of any of those locations, and if there are any children present, he cannot "sit idly" or "remain" within 1,000 feet of their property lines either.

## X: FACTUAL ALLEGATIONS: CENTRALITY OF REGISTRATION TO PLEA NEGOTIATIONS

142. Because of the severe burdens associated with sex offender registration, the issue of whether a conviction will result in registration is critical for criminal defendants.

143. The choice whether or not to plead guilty often turns on whether a defendant must register, for how long a defendant must register, and whether registration is public or private.

144. Doe elected to waive his constitutional right to trial and plead guilty based on his understanding of the consequences of his plea, which did not include sex offender registration.

145. The Act has fundamentally, and retroactively, nearly three decades later, altered the consequences of his plea.

146. CLAIMS FOR RELIEF

COUNT I: VIOLATION OF THE EX POST FACTO CLAUSE

147. The retroactive application of the Act violates the Ex Post Facto Clause of the U.S. Constitution, Art. I, § 10, cl. 1, because it makes more burdensome the punishment imposed for offenses committed prior to its enactment.

COUNT II: VIOLATION OF THE DUE PROCESS CLAUSE (TRAVEL)

148. The right to travel is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment to the United States Constitu- tion.

149. The Act substantially interferes with Doe's ability to travel.

150. The Act does not provide for any individualized consideration before restricting Doe's right to travel.

151. The Act violates Doe's fundamental right to travel because it is not narrowly tailored to serve a compelling state interest.

COUNT III: VIOLATION OF THE DUE PROCESS CLAUSE (WORK)

152. The right to engage in the common occupations of life is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment.

153. The Act substantially interferes with Doe's ability to engage in the common occupations of life.

154. The Act creates a wholesale barrier to employment. That barrier is not based on Doe's fitness or capacity to work in the jobs from which he has been excluded.

155. The Act does not provide for any individualized consideration before restricting Doe's ability to engage in the common occupations of life.

156. The Act violates Doe's fundamental right to engage in the common occupations of life because it is not narrowly tailored to serve a compelling state interest.

COUNT IV: VIOLATION OF THE DUE PROCESS CLAUSE (CHILDREN)

157. The right to direct the education and upbringing of children is a fundamental right that is protected by the Due Process Clause of the Fourteenth Amendment.

158. The Act substantially interferes with Doe's ability to direct the education and upbringing of his children.

159. The Act does not provide for any individualized consideration before restricting Doe's right to direct the education and upbringing of children.

160. The Act violates Doe's fundamental right to direct the education and upbringing of children because it is not narrowly tailored to serve a compelling state interest.

COUNT V: VIOLATION OF THE FIRST AMENDMENT

161. The First Amendment prohibits abridgement of the freedom of speech. The Fourteenth Amendment incorporates the First Amendment against the states.

152. The right to engage in the common occupations of life is a fundamental right that is protected under the Due Process Clause of the Fourteenth Amendment.

153. The Act substantially interferes with Doe's ability to engage in the common occupations of life.

154. The Act creates a wholesale barrier to employment. That barrier is not based on Doe's fitness or capacity to work in the jobs from which he has been excluded.

155. The Act does not provide for any individualized consideration before restricting Doe's ability to engage in the common occupations of life.

156. The Act violates Doe's fundamental right to engage in the common occupations of life because it is not narrowly tailored to serve a compelling state interest.

COUNT IV: VIOLATION OF THE DUE PROCESS CLAUSE (CHILDREN)

157. The right to direct the education and upbringing of children is a fundamental right that is protected by the Due Process Clause of the Fourteenth Amendment.

158. The Act substantially interferes with Doe's ability to direct the education and upbringing of his children.

159. The Act does not provide for any individualized consideration before restricting Doe's right to direct the education and upbringing of children.

160. The Act violates Doe's fundamental right to direct the education and upbringing of children because it is not narrowly tailored to serve a compelling state interest.

COUNT V: VIOLATION OF THE FIRST AMENDMENT

161. The First Amendment prohibits abridgement of the freedom of speech. The Fourteenth Amendment incorporates the First Amendment against the states.

162. The Act requires Doe to report information about his Internet accounts and activity to law enforcement, which substantially interferes with access to the Internet as a forum for speech and eliminates Doe's opportunities for anonymous Internet speech.

163. The Act's requirements to report information about Internet accounts and activity is invalid under the First Amendment both on its face and as applied because it is not narrowly tailored to serve a compelling state interest and because it prohibits a substantial amount of protected speech.

COUNT VI: VIOLATION OF THE DUE PROCESS CLAUSE (RETROACTIVITY)

164. The Due Process Clause of the Fourteenth Amendment imposes limits on retroactive legislation that is harsh or oppressive or that violates principles of fundamental fairness.

165. Doe plead guilty to the offense of attempted aggravated sexual abuse in 1993, received a sentence of probation, successfully completed that sentence, and has not committed any criminal offense since then. At the time he made this plea, Tennessee had no sex offender registration, and Illinois's registry was several orders of magnitude less burdensome than the current Act. Doe is now subject to lifetime sex offender registration and numerous harsh and oppressive restrictions on his liberty.

166. Retroactively imposing the Act on Doe violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

COUNT VII: VIOLATION THE DUE PROCESS CLAUSE (BREACH OF PLEA AGREEMENT)

167. The Due Process Clause of the Fourteenth Amendment prohibits states from breaching a plea bargain.

168. Doe entered into and complied with a valid plea bargain with the State of Illinois in 1993.

169. The Act constitutes a retroactive increase in the punishment inflicted upon Doe and therefore constitutes a breach of his plea bargain in violation of the Due Process Clause.

COUNT VIII: VIOLATION THE DUE PROCESS CLAUSE (CRIMINAL LIABILITY WITHOUT ACTUAL KNOWLEDGE)

170. The Due Process Clause of the Fourteenth Amendment prohibits states from imposing criminal liability for conduct that is wholly passive and does not "alert the doer to the consequences of his deed," without any proof of "actual knowledge of the duty to [to comply with the law] or proof of the probability of such knowledge and subsequent failure to comply. Lambert v. People of the State of California, 355 U.S. 225, 228-229 (1957).

171. The Act imposes criminal liability, without requiring proof of actual knowledge of the duty to comply with the Act, for passive conduct that does not "alert the doer to the consequences of his deed" including but are not limited to:

    a. Working within an Exclusion Zone;

    b. Loitering within an Exclusion Zone; and

    c. Residing within an Exclusion Zone.

COUNT IX: VIOLATION THE DUE PROCESS CLAUSE (VAGUENESS AND IMPOSSIBILITY)

172. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws that are unconstitutionally vague. As a matter of due process, statutory

requirements must be written with sufficient specificity that persons of ordinary intelligence need not guess at their meaning and will not differ as to their application.

173. The Act contains provisions that are invalid under the vagueness doctrine because those provisions fail to provide a person of ordinary intelligence fair notice of what is required and what is prohibited under the statute, making it impossible for Doe to conform his conduct to the statutory requirements and making it likely that the statute will be enforced in different ways in different places or against different people.

174. The Due Process Clause of the Fourteenth Amendment prohibits states from enforcing laws with which it is impossible to comply. The Act contains provisions with which compliance is impossible.

175. The parts of the Act that are void for vagueness or are impossible to comply with include but are not limited to:

    a.  The prohibition on working within an Exclusion Zone,

    b.  The prohibition on loitering within an Exclusion Zone; and

    c.  The prohibition on residing within an Exclusion Zone.

LACK OF LEGAL REMEDY

176. Doe's harm is ongoing and cannot be alleviated except by injunctive relief.

177. No other remedy is available at law.

REQUEST FOR RELIEF

Wherefore, Doe requests that this Court:

    a.  Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that retroactive application of the Act violates the prohibition in the United States Constitution

against ex post facto laws and issue a permanent injunction restraining the defendants from retroactively enforcing the Act against Doe;

b. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the Act unconstitutionally interferes with Doe's fundamental rights to travel, to engage in the common occupations of life, to direct the education and upbringing of his children, and to engage in free speech, and issue a permanent injunction restraining the defendants from enforcing against Doe those provisions of the Act that interfere with these rights;

c. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that retroactively extending the registration period of Doe violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and issue a permanent injunction restraining the defendants from retroactively extending Doe's registration period;

d. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that applying the Act to Doe breaches Doe's plea agreement and violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and issue a permanent injunction restraining the defendants from enforcing the Act against Doe;

e. Issue a judgment, pursuant to 28 U.S.C. §§ 2201-2202, declaring that the Act violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution by imposing criminal liability for passive acts without actual knowledge of the duty to comply, and issue a permanent injunction restraining the defendants from enforcing the Act against Doe;

f.   Issue a judgement, pursuant to 28 U.S.C. Section 2201-2202, declaring that the Act is void under the Due Process lause of the Fourteenth Amendment due to vagueness and impossibility and issue a permanent injuction retraining the defendant from enforcing against Doe those provisions of the Act that are unconstitutional;

g.   Award Doe costs and reasonable attorney's fee pursuant to 42 U.S.C. Section 1988; and

h.   Grant such other relief as the Court finds just and proper.

Respectfully Submitted,

*John Doe*

227 Trousdale Ferry Pike
Lebanon, TN. 37087
(615)207-1571